## AFFIDAVIT OF SPECIAL AGENT JAMES B. MATTSON

I, James B. Mattson, having been duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), currently assigned to the ATF satellite office in Worcester, Massachusetts. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and authorized by law to conduct investigations and to make arrests for a variety of federal offenses, including those enumerated in 18 U.S.C. § 231(a)(3) and 26 U.S.C. §§ 5861(d) and 5871. I have been employed as a Special Agent of the ATF since November 2005. I am a graduate of the Department of Homeland Security, Criminal Investigator Training Program (CITP) and the ATF Special Agent Basic Training (SABT) program at the Federal Law Enforcement Training Center (FLETC) at Glynco, Georgia, where I received instruction in firearms technologies and identification, firearms trafficking, explosives and arson. In 1989, I received a Bachelor of Science in History from Fitchburg State University.

2. I submit this affidavit in support of an application for a criminal complaint charging Vincent EOVACIOUS, born 2002, with civil disorder, in violation of 18 U.S.C. § 231(a)(3), an anti-riot provision of the Civil Obedience Act of 1968, and unlawful possession of an unregistered firearm, in violation of Title 26, United States Code, Sections 5861(d) and 5871.

3. As detailed below, there is probable cause to believe that on or about June 1, 2020, EOVACIOUS knowingly committed civil disorder and that he unlawfully possessed an unregistered firearm in Worcester, Massachusetts.

4. The information set forth in this affidavit is based on an investigation conducted by law enforcement agents, including myself. I have reviewed certain reports prepared by other law enforcement officers regarding their observations, and have had conversations with other law

enforcement agents regarding other facts developed during this investigation. This affidavit is intended to establish sufficient probable cause for the issuance of the requested criminal complaint and does not set forth all of my knowledge about this matter.

## RELEVANT STATUTES

5. Title 18, United States Code, Section 231(a)(3) provides, in pertinent part, that "[w]hoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the conduct or the performance of any federally protected function shall be fined under this title or imprisoned not more than five years, or both."

6. The term "civil disorder" is defined as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of another individual." 18 U.S.C. § 232(1).

7. In addition, the term commerce means commerce which occurs "[b]etween any State or the District of Columbia and any place outside thereof …. between points within any State or the District of Columbia, but through any place outside thereof, …. or wholly within the District of Columbia." 18 U.S.C. § 232(2).

8. The term "law enforcement officer" means, in pertinent part, "any officer or employee of the United States, any State, any political subdivision of a State, or the District of Columbia, while engaged in the enforcement or prosecution of any of the criminal laws of the United States, a State, any political subdivision of a State, or the District of Columbia; and such term shall specifically include members of the National Guard (as defined in section 101 of Title

10) … while engaged in suppressing acts of violence or restoring law and order during a civil disorder." 18 U.S.C. § 232(7)

9. Title 26, United States Code, Section 5861(d) provides that "[i]t shall be unlawful for any person … to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." Title 26, United States Code, Section 5871 further provides that "[a]ny person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both."

10. Based upon my training and experience, I am familiar with devices commonly known as "Molotov cocktails," which typically consist of a bottle or some type of container which can hold an ignitable fluid or liquid. Once such a bottle or container is filled with an ignitable fluid or liquid, a cloth-type material is usually packed as a wick in the opening of the bottle or container. When the wick is ignited, the ignitable fluid or liquid within the container frequently ignites as well. Often, the container is broken after it is thrown or dropped, which causes the ignitable liquid inside to disperse and causes a fire to spread.

11. "Molotov cocktails" are classified as destructive devices under Title 26, United States Code, Section 5845(f), which states, in relevant part, that "[t]he term 'destructive device' means . . . (1) any explosive, incendiary . . . bomb… and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraph[] (1)."

12. In turn, destructive devices are considered firearms under Title 26, United States Code, Section 5845(a)(8).

**STATEMENT OF PROBABLE CAUSE**

13. On June 1, 2020, crowds gathered at various locations in Worcester, Massachusetts to protest the recent death of George Floyd while in police custody in Minneapolis, Minnesota.

14. At approximately 10 p.m., Worcester police officers in the area of May Street and Main Street reported a large crowd blocking traffic and throwing objects in the direction of the police. Despite repeated orders to disperse, the crowd remained and continued to throw objects at the police. Protesters threw rocks, glass bottles, and even fired firecrackers at the police.

15. Officers on scene gathered into a tactical line formation to control the violent crowd. Among those in the line formation was Worcester Police Officer Ilirjan Jano, who was stationed in front of a restaurant located at 848 Main Street. In addition, Worcester Police Sergeant Joseph Albano, head of the Worcester Police Tactical Patrol Force, who is a Task Force Officer with the United States Secret Service, was also present directing his force of approximately 40 tactical officers to control the violent crowd.[1]

16. Both Officer Jano and Sergeant Albano observed a male, later identified as Vincent EOVACIOUS, dressed in a trench coat standing on top of a one-story building located at 848 Main Street, which is clearly marked, "No Trespassing."

17. Officer Jano observed EOVACIOUS looking down on the police line formation. Officer Jano heard EOVACIOUS yell for the crowd below to kill the police, and observed EOVACIOUS pacing back and forth on the rooftop.

---

[1] Members of the National Guard were positioned approximately 2.5 miles away in Green Hill Park. While they remained on call, they were not deployed to support law enforcement's response to the May Street and Main Street violence.

18. Officer Jano next observed EOVACIOUS reach into a satchel that he carried over his shoulder and remove a bottle from the satchel. The bottle appeared to contain a liquid. EOVACIOUS then pulled out a white rag and attempted to insert the rag into the bottle. Officer Jano also observed EOVACIOUS holding a silver object that the officer believed to be a lighter.

19. In response, Officer Jano shined his flashlight at EOVACIOUS, as did other officers in the police line. With flashlights from below upon him, EOVACIOUS stepped back from the edge of the building and out of Officer Jano's direct line of sight.

20. Minutes later, officers observed EOVACIOUS as he walked at street level in the area of May and Main Streets, still carrying the satchel. Officers approached and stopped him.

21. Officer Jano provided *Miranda* warnings to EOVACIOUS. EOVACIOUS told Officer Jano that he was "with the anarchist group." Officers searched the satchel that EOVACIOUS carried and located three clear glass bottles with a slightly yellow liquid which emanated the smell of gasoline, five white rags, one green lighter, and one silver lighter.

22. When asked, EOVACIOUS stated that the liquid in the glass bottles was gasoline. EOVACIOUS further stated that he was "waiting for an opportunity."

23. During the course of this civil disorder, at least one area business suffered property damage. Beacon Pharmacy is located at 810 Main Street. On June 3, 2020, I spoke with the owner of Beacon Pharmacy. He indicated that he closed the business and left the property at 7 pm on June 1, 2020. When he returned the morning of June 2, 2020, he observed damage to the entrance door to the business that was not there the previous evening, before the riot. According to the owner, his pharmacy receives delivery six days a week from a wholesale company, Anda Inc., located in New York. Thus, Beacon Pharmacy is engaged in interstate commerce.

24.     On June 2, 2020, at my request, an ATF employee searched the National Firearms Registration and Transfer Record (NFRTR), to determine if the Molotov cocktails possessed by EOVACIOUS were registered as National Firearms Act (NFA) weapons, as required by law. In addition, the ATF employee queried the name "Vincent EOVACIOUS" through the NFRTR to determine if he had any NFA weapons registered to him specifically. Both searches produced negative results.

## CONCLUSION

Based on the foregoing facts, there is probable cause to believe that Vincent EOVACIOUS: (a) did knowingly commit civil disorder, in that he did knowingly attempt to commit an act to obstruct, impede, or interfere with a law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce; and (b) did knowingly possess a firearm, that is, a destructive device, and that the firearm was not registered to the defendant in the NFRTR.

WHEREFORE, I respectfully request that the Court issue a criminal complaint charging Vincent EOVACIOUS with civil disorder in violation of Title 18, United States Code, Section 231(a)(3) and with unlawful possession of an unregistered firearm, in violation of Title 26, United State Code, Sections 5861(d) and 5871.

Sworn to under the pains and penalties of perjury,

*James B. Mattson /DHH*
Special Agent James B. Mattson
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to via telephone in accordance with Federal Rule of
Criminal Procedure 4.1 on June __3__, 2020:    2:41 p.m.

*David H. Hennessy*
Honorable David H. Hennessy
Chief United States Magistrate Judge

-